Maxwell E. Kirchhoff, Esq.
Jory C. Ruggiero, Esq.
Cole A. Radovich, Esq.
WESTERN JUSTICE ASSOCIATES, PLLC
303 W Mendenhall St., Ste 1
Bozeman, MT 59715
Ph:    (406) 587-1900
Fax:   (406) 587-1901
max@westernjusticelaw.com
jory@westernjusticelaw.com
cole@westernjusticelaw.com
info@westernjusticelaw.com

*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## MISSOULA DIVISION

| | |
|---|---|
| JESSICA O'YATES, on behalf of her minor child, E.O.,<br><br>Plaintiff,<br><br>vs.<br><br>LAURA PLUID, REGAN LEWIS, FORTINE SCHOOL, FORTINE SCHOOL DISTRICT NO. 14, and JOHN DOES 1-10,<br><br>Defendants. | Cause No.: _____<br><br>**COMPLAINT**<br><br>**and**<br><br>**REQUEST FOR JURY TRIAL** |

Jessica O'Yates, on behalf of her minor child E.O. ("Plaintiff"), by and

through counsel, hereby file their Complaint for Damages and Request for Jury

Trial.

## I. PARTIES, JURISDICTION AND VENUE

1.      At all times relevant hereto Plaintiff was a resident of Lincoln County, Montana.

2.      At all times relevant hereto Defendant Laura Pluid ("Pluid"), was a resident of and employed in Lincoln County, Montana.

3.      At all times relevant hereto Defendant Regan Lewis ("Lewis"), was a resident of and employed in Lincoln County, Montana.

4.      At all times relevant hereto Fortine School ("School"), was a kindergarten through eighth-grade school operating in Lincoln County, Montana within Fortine School District No. 14.

5.      At all times relevant hereto, Defendant Fortine School District No. 14 ("District"), was a District organized under Title 20, Chapter 6 of the Montana Code Annotated, operating in Lincoln County, Montana.

6.      At all times mentioned, each of Laura Pluid, Regan Lewis, Fortine School, and Fortine District No. 14, were the representative, agent, employee, joint venturer, or alter ego of each other and in doing the things alleged herein was acting within the scope of its authority as such.  Specifically, each Defendant was but an instrumentality or conduit of the other in causing Plaintiff's damages.

7.      Defendants John Does 1-10 are other persons and/or entities, unknown to Plaintiff at this time, who contributed to causing Plaintiff's damages.

*Complaint and Request for Jury Trial*                                                    *Page 2*

8.     The events that are the basis of Plaintiff's claims against Defendants occurred in Lincoln County, Montana.

9.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.

10.    Plaintiff brings this action to redress a hostile educational environment that denied E.O. equal access to educational opportunities pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681-1688, and Montana state law claims, as more fully alleged herein.

11.    Venue is appropriate pursuant to 28 U.S.C. § 1391(b)(1) and (2) and Local Rule of Procedure 3.2.

## II.  GENERAL ALLEGATIONS

12.    From June 27 to July 13, 2022, Plaintiff E.O., a five-year-old child, attended a summer program ("Program") operated by the District.

13.    The program took place at the School and was attended by students ranging in age from rising kindergartners to seventh graders.

14.    The program was staffed by a program director, two program assistants, a high school student aide, and a cook, all of whom were female.

15.    Program staff issued name tags to the students with a string or ribbon-like material for the students to wear around their necks.

16.     Students routinely changed in and out of bathing suits unsupervised in the School's gymnasium bathrooms.

17.     Students were permitted to change in the bathrooms in a group, despite E.O.'s mother, Jessica O'Yates' ("O'Yates") request for E.O. to use the bathroom alone.

18.     Based on information and belief, E.O. was the youngest student attending the Program.

19.     Following the first day of the Program, E.O. received a black eye from other students during a water balloon and water gun fight.

20.     O'Yates notified Defendant Pluid who assured O'Yates that the School would provide better supervision in the future.

21.     Starting on the day the School issued nametags, E.O. sustained bruising and burn marks on his neck.

22.     E.O. also sustained bruising on his legs and back during the first week of the Program.

23.     Program staff assured O'Yates that the bruising resulted from normal playing.

24.     On several occasions, prior to July 13, 2022, while changing in the bathroom unsupervised, E.O. ran from the bathroom crying with his pants down.

25.     Approximately five days after starting the Program on June 27, 2022, E.O. began exhibiting non-typical behavior including bed wetting, night terrors, fear of using the bathroom alone, and was socially detached.

26.     On July 13, 2022, O'Yates picked up E.O. from the Program and noticed E.O. holding a hard-boiled egg over his head and E.O. complained of extreme pain to his groin area while being buckled into his car seat.

27.     Upon returning home, O'Yates observed injuries to E.O.'s penis including ligature marks around the middle of his penis, discoloration and extreme swelling on the tip and base of his penis, and abrasions on his penis.

28.     O'Yates also observed bruising on E.O.'s scrotum, inner thighs, and buttocks.

29.     Based on information and belief, on July 13, 2022, a program staff member discovered E.O. in the bathroom and removed a string bound around his penis.

30.     The program staff member then put E.O. in a storage closet alone and gave him a hardboiled egg.

31.     E.O. urinated in his pants and an unidentified student or students also poured water on E.O.'s groin area.

32.     Based on information and belief a student or students openly mocked and teased E.O., announcing that the "baby peed his pants."

33.     As a result of the abuse, harassment, and failure of Defendants to take immediate corrective actions, E.O. did not return to the Program after July 13, 2022.

34.     On the evening of July 13, 2022, O'Yates contacted the School's principal, Defendant Pluid to report that E.O. was sexually and physically abused while attending the Program at the School.

35.     Upon information and belief, during all relevant times herein, Defendant Pluid was the District's acting Title IX Coordinator.

36.      On July 14, 2022, O'Yates met with Defendant Pluid at the School and filed a formal complaint with the District later that day by emailing the District Board of Trustees.  O'Yates' email included a detailed description of E.O.'s injuries and stated that O'Yates believed another child was responsible for abusing E.O. in the bathroom at the School.

37.     Immediately after the meeting on July 14, 2022, O'Yates spoke to Program staff and took photographs of Title IX posters in the School's gymnasium, which resulted in Program staff screaming at O'Yates, telling her to leave, and threatening to call law enforcement.

38.     Defendant Pluid contacted law enforcement to report the confrontation and reported that O'Yates alleged her son, E.O., was sexually abused at the School.

39.     On July 15, 2022, law enforcement notified Defendant Pluid that they would not conduct a criminal investigation into the sexual abuse due to the age of E.O. and the other child.

40.     Despite their knowledge of E.O.'s abuse at the Program, Defendants took no corrective actions.

41.     Defendants failed to offer any support services to E.O. after O'Yates filed a report with the District.

42.     Defendant Pluid, the District, and the School failed to conduct a formal investigation into the allegations of sexual harassment, sexual assault, or physical abuse of E.O., instead relying on decisions of local law enforcement and Child Protective Services to take no action.

43.     In a letter dated August 1, 2022, Defendant Pluid informed O'Yates of the District's decision to dismiss the formal complaint claiming the alleged conduct, even if proven, would not constitute sexual harassment as prohibited by Title IX.

44.     Defendant Pluid, the District, and the School knew or should have known about the ongoing abuse and harassment at the program and were deliberately ignorant to it.

45. Ultimately, the abuse, lack of supervision, and the failure of Defendants to take any reasonable action to protect E.O. forced E.O. to withdraw from the Program, School, and District.

46. E.O. has been required to seek medical and mental health treatments in order to relieve his pain, mental anguish, and other conditions, which may never permanently resolve.

47. As a direct and proximate result of Defendants' conduct and deliberate ignorance, Plaintiff has sustained damages, including, but not limited to deprivation of equal access to educational opportunities and benefits, medical costs, pain and suffering, and mental anguish.

## III.  CLAIMS FOR RELIEF

### COUNT ONE – VIOLATION OF TITLE IX
### (Against All Defendants)

48. Plaintiff incorporates the foregoing allegations as if fully restated herein.

49. Title IX of the Educational Amendment of 1972, 20 U.S.C. § 1681, et seq., provides:

> No Person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance. …

*Complaint and Request for Jury Trial*                                    *Page 8*

> [A]n educational institution means any public or private preschool, elementary, or secondary school, or any institution of vocational, professional, or higher education, except that in the case of an educational institution composed of more than one school, college, or department which are administratively separate units, such terms means each such school, college, or department.

50. Upon information and belief, the District and School that operated the Program, received federal funding and financial assistance within the meaning of 20 U.S.C. § 1681(a), subjecting them to the requirements of Title IX.

51. Title IX and basic principles of tort law, including negligence, require the School and District to provide reasonable, appropriate, and prompt resolution and action regarding sexual harassment, abuse, and discrimination complaints, and to provide reasonable accommodations so that students, including E.O., do not suffer from further effects of sexual harassment, abuse, and discrimination.

52. Defendants had duties to protect children, including E.O., from a hostile educational environment.

53. Additionally, the District had a duty to publish its Title IX grievance procedures to notify students, parents, or employees of the District the correct name and title of the District's Title IX coordinator, which it failed to do.

54. Under the supervision of Program staff, student(s) attending the Program abused and harassed E.O. on the basis of sex, subjecting him to physical sexual assault, discrimination, and harassment that was so severe, pervasive, and

objectively offensive that he was denied access to and participation in educational opportunities and benefits.

55.   The lack of supervision and oversight by Defendants and deliberate ignorance of E.O.'s abuse led to a permissive environment for harassment and abuse, creating a sexually hostile educational environment.

56.   Defendants had actual notice and knowledge of and were deliberately indifferent to, the harassment and abuse of E.O.  See *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

57.   Defendants had the power to institute corrective measures and provide support services and other accommodations so that E.O. could participate in the Program and receive educational opportunities and benefits.

58.   Defendants did not institute corrective measures, failed to adequately respond to the complaint of harassment, failed to conduct a formal investigation, and failed to offer support services to E.O. to prevent further damage.

59.   Defendants' response to E.O.'s harassment was not prompt or reasonable under the circumstances.

60.   Had Defendants complied with the policies and legal requirements, and adequately supervised the same, including, but not limited to the requirements of Title IX, E.O. would not have been deprived of the ability to participate in

educational opportunities and benefits.  Defendants failed to comply with such policies and legal requirements.

61.    As a result of Defendants Title IX violations, E.O. has been damaged, including, but not limited to, being deprived access to participate in educational benefits or opportunities, being forced to withdraw from the Program and School, emotional distress, fear, anxiety, trauma, and damage to and delay in E.O.'s education in an amount to be determined at trial.

## COUNT TWO – NEGLIGENCE
### (Against All Defendants)

62.    Plaintiff incorporates the foregoing allegations as if fully restated herein.

63.    At all times relevant hereto, the District and the School employed, Defendants Pluid and Lewis who were under the School's and/or District's direct supervision, employment, and control when they committed the negligent acts described herein.

64.    The abuse and harassment of a student, E.O., by other students was a foreseeable and well-known hazard to the School and District

65.    The School and District have a nondelegable duty to provide protection for its students and are liable for any and all harm caused to E.O. while under the School's and District's care.

*Complaint and Request for Jury Trial*                                                            *Page 11*

66.     Defendants knew of the wrongful conduct by other students against E.O. and failed to provide adequate adult supervision for E.O. while he was changing clothes with other children ranging in age from rising kindergartners to seventh graders.

67.     Upon learning of the harassment and abuse, Defendants had a duty to immediately initiate an investigation, and implement reasonable safeguards and protective measures to protect E.O.'s interests, among other actions.

68.     Defendants negligently failed to conduct an investigation or implement reasonable safeguards and protective measures.

69.     Defendants negligently failed to exercise ordinary care in the supervision of children attending the Program.

70.     Defendants negligently failed to train and supervise their staff overseeing the daily activities at the Program.

71.     Defendants negligently failed to take reasonable steps to keep E.O. safe to prevent harassment and abuse.

72.     Defendants negligently failed to take reasonable steps to ensure E.O. could safely continue his education without further harassment or abuse.

73.     Defendants' negligence was the cause or proximate cause of E.O.'s injuries.

74.     As a result of Defendants' Pluid and Lewis' negligence and the School's and District's vicarious liability, E.O. has been damaged in an amount to be determined at trial.

### COUNT THREE – FALSE IMPRISONMENT
### (Against All Defendants)

75.     Plaintiff incorporates the foregoing allegations as if fully restated herein.

76.     After E.O. was sexually and physically abused in the bathroom on July 13, 2022, a program staff member or members put E.O. into a storage closet at the School, thereby restraining E.O.'s freedom of movement and confining him against his will.

77.     The program staff member or members intended to restrain E.O.'s freedom of movement.

78.     The restraint of E.O. was unlawful and without justification.

79.     Based on information and belief, E.O. was confined in the storage closet for a substantial amount of time before being allowed to leave the closet near the end of the day.

80.     Defendants' false imprisonment of E.O. is the cause or proximate cause of E.O.'s injuries.

81.     As a result of Defendants' actions, E.O. has been damaged in amount to be determined at trial.

### COUNT FOUR – EMOTIONAL DISTRESS
### (Against All Defendants)

82.     Plaintiff incorporates the foregoing allegations as if fully restated herein.

83.     The negligent acts or omissions by Defendants as set out above have proximately caused and resulted in negligent and intentional infliction of emotional distress to E.O.

84.     As a result, E.O. suffered serious or severe emotional distress.

85.     E.O.'s serious or severe emotional distress was a reasonably foreseeable consequence of Defendants' actions.

86.     Defendants knew or should have known that their actions and/or inactions would cause or have a high probability of causing injury to E.O.  Despite this, Defendants acted with a conscious disregard for the high probability of injury to E.O.

87.     As a result of the emotional distress suffered by E.O., he has been injured in an amount to be determined at trial.

## IV.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1.     For judgment in favor of Plaintiff and against Defendants on all Counts;

2.     For all past, present, and future medical expenses incurred by Plaintiff resulting from Defendants' conduct;

3.     For compensatory damages to be proved at trial, including, but not limited to expenses incurred as a consequence of the harassment and abuse, loss of educational benefits and opportunities, past, present and future mental anguish and emotional distress, and pain and suffering;

4.     For an award of reasonable attorney fees and costs;

5.     For an award of interest, as deemed appropriate by the Court and as permitted by law;

6.     For other such relief as the Court deems just.

## V.  REQUEST FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable. DATED this 21st day of March, 2024.

**WESTERN JUSTICE ASSOCIATES, PLLC**

/s/ Maxwell E. Kirchhoff
Maxwell E. Kirchhoff, Esq.
303 West Mendenhall Street, Suite 1
Bozeman, MT 59715
Ph: (406) 587-1900

*Attorney for Plaintiff*