IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JESSICA O'YATES, on behalf of her minor child, E.O., <br><br> Plaintiff, <br><br> vs. <br><br> LAURA PLUID, REGAN LEWIS, FORTINE SCHOOL DISTRICT NO. 14, and JOHN DOES 1–10, <br><br> Defendants. | CV 24–35–M–DLC <br><br><br> ORDER |

Before the Court is United States Magistrate Judge Kathleen L. DeSoto's Findings and Recommendation ("F&R") regarding Defendants' Motions to Dismiss (Docs. 13, 25). (Doc. 31.) Judge DeSoto recommends that this Court deny both Motions. (Doc. 31 at 1.) For the reasons herein, the Court adopts Judge DeSoto's F&R in full and denies the Motions.

**FACTUAL BACKGROUND**[1]

Plaintiff Jessica O'Yates filed this action on behalf of her minor child, E.O.

---

[1] The background section is taken from the Amended Complaint and Request for Jury Trial (Doc. 24). The facts are assumed to be true for the purpose of resolving this Motion to Dismiss.

1

E.O. was five years old at the time of the events that form the basis of this lawsuit. On June 27, 2022, O'Yates enrolled E.O. in a summer program operated by Defendant Fortine School District ("the District"). The program was open to students ranging in age from rising kindergartners to seventh graders. Prior to enrolling E.O. in the summer program, O'Yates met with Defendant Laura Pluid—who happened to be the District's acting Title IX Coordinator—and expressed her concerns about E.O. attending a program with children that were much older than him. O'Yates told Pluid that she was not comfortable with E.O. changing clothes with other children in the bathroom and requested that E.O. be allowed to use the bathroom alone. Pluid assured O'Yates that the children would always be supervised, and children of different ages would not be allowed in the bathroom together.

Following E.O.'s first day of attendance at the summer program, E.O. sustained a black eye and other physical injuries. E.O. also sustained bruising and burn marks around his neck, as well as bruising on his legs and back. After approximately five days of attendance at the summer program, E.O. began behaving differently; specifically, E.O. began wetting the bed, experiencing nightmares, expressing fear of using the bathroom alone, and exhibiting detachment.

On several occasions, while changing in the summer program bathroom unsupervised, E.O. ran from the bathroom crying with his pants down. The District did not conduct any inquiry into what was occurring in the bathroom while children were changing.

O'Yates spoke with summer program staff and expressed her concerns regarding E.O.'s injuries and the level of supervision at the program. Staff members assured O'Yates that they would be more diligent with supervision. O'Yates also left several voice messages with Pluid—including a voicemail on Pluid's personal cellphone—reporting E.O.'s injuries and suspected harassment occurring at the summer program. O'Yates's messages went unanswered; nobody from the District returned her calls.

On July 13, 2022, a program staff member entered the bathroom after hearing a boy screaming out in pain. The staff member discovered E.O. in the bathroom with other children. Another student or students had manipulated, bound, and otherwise injured E.O.'s body, penis, and testicles while in the bathroom. The staff member removed a string that was tightly bound around E.O.'s penis. The staff member then put E.O. in a storage closet and gave him a hardboiled egg. Later that day, E.O. urinated in his pants and an unidentified student or students poured water on E.O.'s groin area. The student or students mocked E.O. and

3

announced that the "baby peed his pants."

When O'Yates picked up E.O. from the program that day, he was holding a hardboiled egg over his head. When O'Yates buckled E.O. into his car seat, E.O. complained of extreme pain in his groin area. Upon returning home, O'Yates observed injuries to E.O.'s penis including ligature marks around the middle of his penis, discoloration and extreme swelling on the tip and base of his penis, and abrasions on his penis. O'Yates also observed bruising on E.O.'s scrotum, inner thighs, and buttocks.

That evening, O'Yates spoke with Pluid and reported that E.O. was sexually and physically assaulted while attending the program. The following day, July 14, 2022, O'Yates met with Pluid at Fortine School and filed a formal complaint with the District by emailing the District Board of Trustees. O'Yates's email included a detailed description of E.O.'s injuries and stated that O'Yates believed another child was responsible for abusing E.O. in the bathroom. Immediately after meeting with Pluid, O'Yates spoke to program staff and took photographs of Title IX posters that were hanging in the Fortine School gymnasium. Program staff began screaming at O'Yates, telling her to leave and threatening to call law enforcement. Pluid contacted law enforcement to report the confrontation with O'Yates, but did not mention the sexual assault of E.O.

Defendants did not conduct a formal investigation into O'Yates's allegations, took no corrective action, and did not coordinate or implement any supportive services. On August 1, 2022, Pluid informed O'Yates via a written letter that the District had decided to dismiss O'Yates's complaint because the alleged conduct, even if proven, would not constitute sexual harassment under Title IX. Ultimately, O'Yates withdrew E.O. from the District.

The U.S. Department of Education ("DOE"), Office for Civil Rights ("OCR") conducted an independent investigation into the alleged assault on E.O. and determined that the District discriminated against E.O. on the basis of sex by dismissing the complaint of sexual harassment field by O'Yates, relying upon decisions of local law enforcement and child protective services instead of conducting an independent analysis under Title IX standards, and by failing to offer E.O. supportive services following the report that he was sexually harassed while at the District's summer program.

## PROCEDURAL BACKGROUND

O'Yates originally filed this action in March 2024. (Doc. 1.) Following Defendants' first motion to dismiss (Doc. 13)—which is now moot—O'Yates filed an Amended Complaint (Doc. 24). The Amended Complaint alleges four causes of action: Violation of Title IX against the District (Count 1); Negligence against all

Defendants (Count 2); False Imprisonment against all Defendants (Count 3); and Emotional Distress against all Defendants (Count 4). On June 26, 2024, Defendants filed the motion to dismiss which is the subject of this Order. (Doc. 25.) On February 11, 2025, Judge DeSoto issued her F&R recommending that the first motion to dismiss be denied as moot and the second motion to dismiss be denied. (Doc. 31.)

## LEGAL STANDARDS

### I. Objections to the F&R

Defendants timely filed objections to the F&R. (Doc. 32.) Consequently, Defendants are entitled to *de novo* review of those findings and recommendations to which they object. 28 U.S.C. § 636(b)(1)(C); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Absent objection, this Court reviews the F&R for clear error. *McDonnell Douglas Corp. v. Commodore Bus. Mach., Inc.*, 656 F.2d 1309, 1313 (9th Cir. 1981). Clear error exists if the Court is left with a "definite and firm conviction that a mistake has been committed." *United States v. Syrax*, 235 F.3d 422, 427 (9th Cir. 2000).

### II. Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Dismissal is appropriate "where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017) (internal quotation marks omitted).

## DISCUSSION

### I. Plausible Title IX Claim

A school that receives federal funding can be held liable for student-on-student harassment under Title IX if the conduct was "on the basis of sex" and: (1) "the school had substantial control over the harasser and the context of the harassment"; (2) the harassment was so severe that it deprived the victim of access to educational opportunities or benefits; (3) "a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment"; and (4) the school acted with "such deliberate indifference to the harassment such that the indifference subjected the plaintiff to harassment." *Grabowski v. Ariz. Bd. of Regents*, 69 F.4th 1110, 1118–19 (9th Cir.

2023).

### A. On the Basis of Sex

Defendants object to the F&R's finding that the alleged conduct was on the basis of sex. Defendants open their argument by suggesting E.O. experienced nothing more than bullying. (Doc. 32 at 8 ("Title IX is not an anti-bullying statute.")) Defendants cite to *Davis v. Monroe County Board of Education*, where the United States Supreme Court explained:

> Courts, moreover, must bear in mind that schools are unlike the adult workplace and that children may regularly interact in a manner that would be unacceptable among adults. Indeed, at least early on, students are still learning how to interact appropriately with their peers. It is thus understandable that, in the school setting, students often engage in insults, banter, teasing, shoving, pushing, and gender-specific conduct that is upsetting to the students subjected to it.

526 U.S. 629, 651–52 (1999) (internal citations omitted).

At the outset, the Court is dumbfounded by Defendants' suggestion that the alleged conduct here fits within *Davis*. According to the Amended Complaint, on July 13, 2022, a student or students tightly tied a string or ribbon around E.O.'s penis. (Doc. 24 ¶¶ 33–34.) The student or students "touched, manipulated, bound, and otherwise injured E.O.'s body, penis[,] and testicles," resulting in "injuries to E.O.'s penis[,] including ligature marks around the middle of his penis, discoloration and extreme swelling on the tip and base of his penis, and abrasions

on his penis." (Doc. 24 ¶¶ 34, 39.) This alleged conduct is not an insult, banter, teasing, shoving, nor pushing. It is not bullying.

Defendants—unpersuasively—attempt to analogize the facts of this case to *Riboli v. Redmond Sch. Dist. 2J*, 2022 WL 309227 (D. Or. Feb. 2, 2022). (Doc. 32 at 14.) In that case, the plaintiff failed to state a claim under Title IX where a student was harassed and insulted based on the student's weight. For example, other students called the recipient of the insults a "hungry hungry hippo," and told her she "would never get a boy she liked because she was fat." *Id.* at *1. Defendants also cite to *Parents for Privacy v. Barr*, 949 F.3d 1210 (9th Cir. 2020). There, the Ninth Circuit held that a school policy allowing transgender students to use a restroom that aligned with their gender identity was not harassment based on sex in violation of Title IX. *Parents for Privacy*, 949 F.3d at 1228. Neither of these cases involved sexual assault; at risk of understatement, Defendants miss the mark.

The Court finds *L.S. v. Hanover Area Sch. Dist.*, 2024 WL 2393038 (M.D. Pa. May 23, 2024), persuasive. There, like here, the plaintiff brought a Title IX action on behalf of her minor daughter alleging that her daughter was sexually assaulted by other students at school. *L.S.*, 2024 WL 2393038, at *1. Specifically, the plaintiff alleged that two boys knocked her daughter down on the playground, pulled her pants and underwear down, and shoved mulch into her buttox. *Id.* at *2.

The court denied defendants' motion to dismiss finding that the alleged conduct fell squarely within the purview of Title IX. *Id.* at *16.

Defendants contend that the F&R's reliance on *L.S.* was misplaced because the *L.S.* court relied on the DOE's expanded definition of sexual assault, which, according to Defendants, is limited to administrative enforcement actions. (Doc. 32 at 10–11.) Plaintiff disagrees, highlighting that the DOE's amended implementing regulations do not exclude the application of the expanded definition of "sexual harassment" to judicial enforcement. (Doc. 33 at 16.) The Court agrees with Plaintiff.

At least two district courts have recognized the expanded definition of sexual harassment in private Title IX actions. *See*, *L.S.*, 2024 WL 2393038, at *6 (finding that the plaintiff had "advanced allegations placing this incident within the definition of 'sexual assault,' which in turn, meets the definition of 'sexual harassment' as set forth in the Title IX regulations."); *see also Posso v. Niagara Univ.*, 2020 WL 8771334, at *7 (W.D.N.Y. Nov. 2, 2020) (applying the DOE definition of sexual harassment to a private Title IX action alleging sexual assault), report and recommendation adopted, 518 F. Supp. 3d 688 (W.D.N.Y. 2021). Defendants do not cite to—and the Court is unaware of—any case in which a district court found that sexual assault did not meet the sexual harassment

10

definition found in the Title IX regulations.

Finally, Defendants argue that *L.S.* is distinguishable from the facts of this case because in *L.S.*, the court found that the boys who targeted the plaintiff on the playground were acting in a sexual manner. (Doc. 32 at 11–12.) Defendants state that here, "there is no eyewitness account (as in *L.S.*) or any other allegations suggesting the child who committed the act was 'acting in a sexual manner,' that the conduct was 'sexual in nature,' or that it was somehow motivated by E.O.'s sex or gender." (Doc. 32 at 12.) This argument is similarly unavailing. The Court takes no leaps in arriving at the unremarkable conclusion that sexual assault is inherently sexual in nature. Defendants' objection is OVERRULED.

### B. Severe, Pervasive, and Objectively Offensive

Next, Defendants argue that "a single incident, no matter how vile, cannot, by definition, be 'pervasive.'" (Doc. 32 at 16.) The Court disagrees.

As Judge DeSoto explained in her F&R, the United States Supreme Court has "not ruled out the possibility that a single instance of 'sufficiently severe one-on-one peer harassment' could be actionable under Title IX." (Doc. 31 at 12 (citing *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 652 (1999).)

Defendants point to *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736 (9th Cir. 2000), where the Ninth Circuit concluded that a school district could not be

held liable under Title IX for excluding female students from a commencement ceremony as punishment for throwing water balloons at boys in the boy's restroom. The female students alleged that they threw the water balloons in retaliation for prior unreported harassment from the boys. *Id.* at 738. The Court finds *Reese* distinguishable.

In *Reese*, a teacher overheard a female student threaten one of the plaintiff female students prior to harassment from the boys. *Id.* at 740. The Ninth Circuit affirmed the district court's finding that a single threat was insufficient to establish pervasive harassment because it did not provide notice "that worse and ongoing alleged harassment was being committed by the male students, or that the plaintiffs were being harassed so severely as to be deprived of educational benefits." *Id.* In contrast, here, Plaintiff alleges that E.O. was subjected to physical abuse at the District which eventually culminated in the sexual assault that forms the basis of this lawsuit. (Doc. 24 ¶¶ 20–21, 32–34, 39–40.) The Court finds that Plaintiff has alleged sufficient facts to support a plausible inference that the conduct at issue was severe, pervasive, and objectively offensive.

Furthermore, the implementing regulations of Title IX suggest that where the sexual harassment at issue involves sexual assault, a plaintiff is not required to satisfy the *Davis* elements of severity, pervasiveness, and objective offensiveness.

*See Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance*, 85 FR 30026-01 (explaining that the Department included sexual assault, dating violence, domestic violence, and stalking in the definition of sexual harassment without requiring those sex offenses to meet the *Davis* elements of severity, pervasiveness, and objective offensiveness).

Defendants also argue that the Amended Complaint fails to plausibly allege that the sexual harassment deprived E.O. of educational access or opportunities. (Doc. 32 at 18.) The Court disagrees.

Plaintiff alleges that E.O. sustained a black eye, as well as bruising and burn marks on E.O.'s neck while at the summer program. (Doc. 24 ¶¶ 19–20.) E.O. also sustained bruising to the legs. (*Id.* ¶ 21.) On several occasions, E.O. ran from the bathroom crying with his pants down. (*Id.* ¶ 23.) Despite Plaintiff's reports of these incidents to program staff, the conduct escalated, and ultimately, E.O. was sexually assaulted. (*Id.* ¶¶ 26–34.) The following day, Plaintiff filed a formal complaint reporting the sexual assault. (*Id.* ¶ 44.) Despite the complaint, Defendants did not conduct a formal investigation, did not take any corrective actions, and did not offer any support or services to E.O. (*Id.* ¶¶ 49–52.) Ultimately, according to Plaintiff, "the sexual assault, lack of supervision, and the failure of Defendants to

take any reasonable action to protect E.O. forced E.O. to withdraw from the Program[] and District." (*Id.* ¶ 62.) These allegations are sufficient to infer that Defendants deprived E.O. of educational access or opportunities. Defendants' objection is OVERRULED.

### C. Actual Knowledge

Next, Defendants object to the F&R's finding that a school official who had authority to address the alleged discrimination had actual knowledge of the discrimination and acted with indifference to that knowledge. (Doc. 32 at 19.) Specifically, Defendants contend that E.O.'s withdrawal from the District gave "Pluid no chance to respond with remedial measures to address the alleged sexual harassment." (*Id.* at 20.) The Court disagrees.

A defendant has "actual notice" within the meaning of Title IX where "a school official who had authority to address the issue and institute corrective measures for the school had actual knowledge of the harassment." *Grabowski*, 69 F.4th at 1119. Here, Pluid was put on notice of E.O.'s sexual assault when O'Yates reported the assault over the phone on the evening of July 13, 2022. (Doc. 24 ¶¶ 41, 44.) Plaintiff does not allege that she immediately withdrew E.O. from the District. Rather, Plaintiff alleges that the due to the District's failure to respond, investigate, or implement any corrective measures, E.O. did not return to the

summer program and *ultimately*, E.O. was "forced [] to withdraw from the Program, and District." (*Id.* ¶ 62.) The Court finds these allegations sufficient to infer at the motion to dismiss stage that Defendants had actual knowledge of the sexual harassment within the meaning of Title IX. Defendants' objection is OVERRULED.

### D. Deliberate Indifference

Defendants object to Judge DeSoto's finding that Plaintiff pled sufficient facts to infer that Defendants acted with deliberate indifference. (Doc. 32 at 20–24.) Specifically, Defendants argue that "it is entirely unclear from the face of the amended Complaint how the District's response to O'Yates'[s] complaint was 'clearly unreasonable in light of the known circumstances.'" (*Id.* at 21.) Again, the Court disagrees.

Plaintiff alleges that the District did not conduct any formal investigation into her report regarding the sexual assault of E.O., that the District took no corrective action, and did not coordinate or implement any supportive measures. (Doc. 24 ¶¶ 49–50, 52–53, 55.) Plaintiff alleges that "Defendants did not attempt to interview the other children attending the program, including the children in the bathroom with E.O., regarding the sexual assault, or why E.O. had on several prior occasions, run abruptly from the bathroom without clothing." (*Id.* ¶ 53.) Rather,

15

Defendants called law enforcement to report the confrontation with Plaintiff, and ultimately relied on law enforcement's decision to take no action. (*Id.* ¶¶ 46, 55.)

Defendants also argue that Plaintiff fails to allege that E.O. was subjected to any further harassment or left more vulnerable to further harassment. (Doc. 32 at 24.) In response, Plaintiff argues that "[t]he law does not and should not require vulnerable children to endure further harassment or assault to have an actionable claim under Title IX." (Doc. 33 at 26.)

The Court finds *Takla v. Regents of the University of California*, 2015 WL 6755190 (C.D. Cal. Nov. 2, 2015) instructive. In that case, the United States District Court for the Central District of California rejected an argument identical to Defendants' argument here, explaining that "placing undue emphasis on whether further harassment actually occurred to gauge the responsiveness of an educational institution would penalize a sexual harassment victim who takes steps to avoid the offending environment in which she may again encounter the harasser." *Takla*, 2015 WL 6755190 a *16. The Court agrees with the *Takla* court's reasoning and concludes that Plaintiff's steps to protect E.O. from further harassment does not preclude a finding of deliberate indifference here.

Defendants' objection is OVERRULED.

### E. Actionability of the District's Alleged Failure to Publish Grievance Procedures

Defendants argue that the District's alleged failure to publish Title IX grievance procedures is not actionable under Title IX. (Doc. 32 at 25.) Plaintiff agrees. (*See* Doc. 33 at 17 n.3 "Plaintiff does not allege and agrees with Defendants that the District's failure to publish grievance procedures does not create a private right of action.") Therefore, this objection is SUSTAINED.[2]

## II.  Supplemental Jurisdiction

Finally, Defendants argue that "because the Amended Complaint fails to state a federal cause of action under Title IX that would give rise to this Court's original jurisdiction, its State law claims should also be dismissed." (Doc. 32 at 25.) As outlined above, the Court finds that Plaintiff pled a plausible claim for relief under Title IX; therefore, Defendants' final objection is OVERRULED.

Reviewing Judge DeSoto's remaining findings and recommendation for clear error, the Court finds none.

### CONCLUSION

Plaintiffs have pled a plausible claim for relief under Title IX. As such,

---

[2] Judge DeSoto did not make any findings or recommendations as to the actionability of the District's alleged failure to publish grievance procedures. As such, despite sustaining this objection, the Court adopts Judge DeSoto's F&R in full.

Defendants' Motion to Dismiss (Doc. 25) must be denied.

Accordingly, IT IS ORDERED that Judge DeSoto's F&R (Doc. 31) is ADOPTED IN FULL.

IT IS FURTHER ORDERED that Defendants' first Motion to Dismiss for Failure to State a Claim (Doc. 13) is DENIED AS MOOT and Defendants' second Motion to Dismiss for Failure to State a Claim (Doc. 25) is DENIED for the reasons outlined in this order.

DATED this 6th day of May, 2025.

_____
Dana L. Christensen, District Judge
United States District Court